MHFA TENANT SELECTION PLAN

1. Access by minority applicants.

2. Timely internal transfers for existing tenants in serious need

The Agency is implementing preference for existing tenants to avoid the displacement of tenants who cannot afford moderate or market rents.  paragraph #3 and 4.


760 CMR: DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

49.05: Determination of the Value of the Voucher

(6) In cases of extreme medical hardship, each participant who has been granted an exception to the Maximum Allowable Rent, used in the Chapter 707 Program as of September 1, 1991 shall be eligible for an additional monthly Voucher Payment in the amount of the difference between the rent approved and the Ceiling Rent. The LHA shall determine on an annual basis at recertification that the Participant remains eligible for an extreme medical status.

49.10: Grievance Procedure

Grievance as defined in 760 CMR 6.03 may be filed by Participants. Grievances so filed shall be processed in accordance with 760 CMR 6.08 as otherwise approved by the Department.

49.11: Waiver Provision

Provisions of 760 CMR 49.00 may be waived in writing by the Director of the Department of Housing and Community Development if requested by an LHA in writing for a good reason.

REGULATORY AUTHORITY

760 CMR 49.00: M.G.L. c. 23B: c. 121B §29.

FAIR HOUSING ACT AS AMENDED, EFFECTIVE MARCH 12, 1989

Sec. 800 [42 U.S.C. 3601 note] Short Title
   This title may be cited as the "Fair Housing Act."

   Sec. 802 [42 U.S.C. 3602] Definition

   (h) "handicap" means, with respect to a person — —
      (1) a physical or mental impairment which substantially
limits one or more of such person's major life activities,

   (i) "Aggrieved person" includes any person who — —
      (1) Claims to have been injured by a discriminatory housing
practice; or

      (2) believes that such person will be injured by a discriminatory
housing practice that is about to occur.

   (K) "Familial status" means one or more individuals (who have not
      attained the age of 18 years) being domiciled with — —
      (2) the designee of such parent or other person having such
   custody, with the written permission of such parent or other person.

The protections afforded against discrimination on the basis of familial
status shall apply to any person who is pregnant or is in the process
of securing legal custody of any individual who has not attained the
age of 18 years.

Sec. 804. [42 U.S.C. 3604] Discrimination in sales or rentals or Housing and other prohibited practices

Dependent Oak hee Ruesch, has an environmental illness, a handicap under the Act. 42 U.S.C. § 3602(h); 24 C.F.R. § 100.20 (1991)

Sec. 804. [42 U.S.C. 3604](C)(f)(2)(3)(B)

Sec. 804. (E). It is unlawful to make or publish, or cause to be made or published, any notice or statement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on handicap, or an intention to make any such preference, limitation, or discrimination. 42 U.S.C. § 3604(c); 24 C.F.R. §§ 100.50 (b) and 100.75(a) (1991). These prohibitions extend to all statements by a person engaged in the rental of a dwelling. 24 C.F.R. § 100.75(b) (1991). Prohibited practices include Using words or phrases that convey to renters that dwellings are available or are not available to particular persons because of handicap and expressing to any person a preference for or limitation on any renters because of handicap. 24 C.F.R. §§ 100.75 (c)(1) and (2) (1991).

Sec. 804. (f)(2). It is unlawful to discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in Connection therewith, because of handicap. 42 U.S.C. § 3604 (f)(2); 24 C.F.R. §§ 100.60 (a) and 100.202 (b) (1991).

Sec. 804. (f)(3)(B). For the purpose of [42 U.S.C. S 3604 (f)], discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations maybe necessary to afford a handicaped person equal opportunity to use and enjoy a dwelling. [42 U.S.C. S 3604] (f)(3)(B); 24 C.F.R. S 100.204(a) 1991.

Sec. 812. (g)(3) [42 U.S.C. S 3612), enjoins the managements CFic and WHAY, their agents, employees, and successors, and all other persons in active concert or participation with them from discriminating against any person based on handicap in any aspect of the rental of a dwelling.

Sec. 812 (g)(3)(B)(c) in an amount not exceeding $25,000 if the violator has been adjudged to have committed one other discriminatory housing practice during the 5-year period and in an amount not exceeding $50,000 if the violator has been adjudged to have committed 2 or more discriminatory housing practices during the 7-year period ending on the date of the filing of this charge;

except that if the acts constituting the discriminatory housing practice that is the object of the charge are committed by the same natural person who has been previously adjudged to have commited acts constituting a discriminatory housing practice, then the civil penalties set forth in subparagraphs (B) and (c) may be imposed without regard to the period of time within which any subsequent discriminatory housing practice occured. It is my opinion that all of laws I write here by my knowledge that Fic management, Wellesley Housing Authority, courts and other people discriminated plaintiff based on handicap, minority, helpless woman who could not function with current environment. All are violated the Act, [42 U.S.C. SS 3601-19. That I want to pursue after 6 year of retaliations and daily poisening life.

Dah hal ha

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Oak-hee Ruesch
    Plaintiff

            VS.

James A. Goodhue
Joseph Gray
    Defendants

CIVIL ACTION

NO.

COMPLAINT

Parties

1. The plaintiff is a resident of Wellesley, Eastern County, Massachusetts and a citizen of the United States.

2. James A. Goodhue is a attorney of Wellesley Housing Authority (Louis M. Malerba, Jr. former director) 40 Grove St. Suite 190, Wellesley, Eastern County, Massachusetts and a citizen of the United States.

3. Joseph Gray former employee of Wellesley Housing Authority resident of Wellesley, Eastern County, Massachusetts and a citizen of the United States.

Jurisdiction

4. This court has jurisdiction over this matter pursuant to 42 U.S.C. 3601 - 19 ]. Discriminatory Housing practices

5. July 18, 2002 James A. Goodhue and Joseph Gray took me to Dedham District Court to evict me claimed as Non-payment of rent against rent adjustments under the 760 CMR DHCD 49.05 and 49.10.

6. First Justice Jerald Alch rejected James A. Goodhue's claim strictly only rent against disable person that I did not pay a penny since I moved in, I wasn't able to speak out against incorrect statements made by James A. Goodhue.

I only able to say difficulty coming to court, un accessible unit I am in with brocken windows, no ventilations and I wasn't able to state the significant threat to my health and safety by the immediate neighbour and others Use of all kinds of chemicals already I was in new carpet and paint to have cross reactions to greater exposure to toxic chemicals.

I was being abused and Housing Authority should not get involve abuse by the private person.

7. Justice Jerald Alch denied with emotions! But James A. Goodhue made judgement as court order to make me to pay. Due to my illness, I wasn't able to go to court.

8. October 28, 2002. I recieved eviction notice by James A. Goodhue's preparation.

9. I called WHA to ask why such things happening, Louis M. Malerba, Jr answered that he recieved from constable.

10. I went to Dedham District Court to speak to Justice Jerald Alch, but reffered to Judge Connolly who already violated my rights to be homeless from July 8, 1999 to December 1999 that my motion to open the case not allowed that was the reason James A. Goodhue did again.

11. Judge Lynda M. Connolly ordered to see Court psychologist, Fredrick Kelso. I gave all medical records and explained years of abuses by the business man and doctors. I also gave Dr. Kelso to speak only Dr. James D. Walton, psychiatrist whom I had to see because of the Dr. Albert L. Sheffer who instructed Housing Authority to mistreat me.

12. I was ordered by Dr. Kelso's recommendation that I am incompetent to cover up justice Alch's order and the Albert L. Sheffer, MD and Don C. Bienfang's (MD) attempted to evict me, so they have free-dom to controll over my life, so that was fighting between Albert L. Sheffer, MD and Don C. Bienfang, MD.

13. Judge Connolly appointed G.A.L. Kevin Hampe to set up the payee to controll my SSI and SSDI, but actual G.A.L. was Albert L. Sheffer, MD, who did the all the controlling work and Kevin Hampe was just name on the order.

14. I was in 4 Cedar St #302, Wellesley, MA 02481 given by Landmark RealEstate July 1996 only my name signed to protect further abuses due to my illness and no one to help me out after the divorce and lost of son's custody. To gain custody I need to have secured place to live Sec. 202 (K)(2) and in accordance MHFA Regulatory Agreements.

15. By Judge Lynda M. Connolly's order I was evicted against my lease and the rules and regulations by the federal and state law. I stayed Pine St Inn from September 19, 1999 to May 2000.

16. While I was in Pine St Inn, I made complaints to HUD No: 01-00-0296-8, and MCAD No: 00-15-0481 3/2/00, against WHA.

17. Louis M. Malerba, Jr, former director of WHA offered one bed room elderly housing unit to MCAD Investigator, Andrea Sunday who called me at Pine St Inn dated 4/26/00 to accept offer I need to come to her office and sign the withdrawal form. I went to MCAD dated 4/29/00 and signed. 10 days later recieved letter from Andrea Sunday with incorrect statement she made to help out WHA

To discriminate even further that I have mental illness and I sent her letter to withdraw my complaint. I wasn't able to write the letter nor I have mental illness, if mental illness, then why HUD and MCAD accepts my complaints. It is an environmental illness! (42 u.s.c. § 3602) (h); 24 C.F.R. § 100.20 (1991) And the date not 4/18/00, 4/28/00.

18. Louis M. Malerba, Jr, gave me key to go to the 315 Weston Rd #A3 Wellesley, MA 02482, newly painted and carpeted filled chemicals outside and inside by the immediate neighbor to retaliate me to accommodate to get worth to my health.

19. All need to be proved by the law that I was discriminated by the courts given documentations already displaced from privouse apartment where more accessible unit and put me totally disadvantaged place where I have walk hours to get groceries, no ventilations and others. Still not enough to repeat eviction proceedings by 3 more doctors June 2001, July 2002, and October 2002. Violating Sections of 812. (g)(3)

20. Judge Connolly again ordered I am incompetent to support violators. by my ability. I do not know how I could convince court to justify those who lives without consequencies. Violations of my civil rights my lease only my name in and settlement by MCAD without any conditions. And District court doesn't have power to set up guardian ship, but she did to discriminate helpless woman.

21. I ask this court relief my incompetency by the Act of 802 (h) (1)(1)(2) and 804 (c) (f) (2).

22. plaintiff Oak hee Ruesch request a trial by-jury.

23. The plaintiff demands a trial by jury under laws given by the federal and state government.

Oak hee Ruesch
315 Weston Rd #A3
Wellesley, MA 02482
(781) 237-5231

Give laws by the federal and State has been abandoned by the people who are responsible to allow any one who needs to support difficult illness because of the race, handicap status, economic difficulties, and no one to help out.

1) 4 Cedar St #302, Wellesley MA, 02481 2 bedrooms unit was given by Land Mark Real Estate dated June 10, 1996 to avoid my ex husband's abuse of me with helplessly weak and no one to help me out and what Concord Court did for my divorce filed by my ex-husband who took my son's custody not to give out any money.

4 Cedar St 36 units (Ardmore at Wellesley) was financed by Massachusetts ~~From~~ Housing Finance Agency (MHFA) and Department of Housing and Community Development (DHCD) under the programs of federal and State law;

MHFA No. 78-049-S

<u>REGULATORY AGREEMENT</u>

AGREEMENT between Owner and Massachusetts Housing Finance Agency (the "Agency"), a body politic and corporate, organized and operated under the provisions of Chapter 708 of the Acts of 1966 of the Commonwealth of Massachusetts as amended (the "Act").

1. Owner further agrees to fulfill this requirment by utilizing the Section 8 Rental Assistance Payments Program or the Rental Voucher Program of the Commonwealth of Massachusetts. In the event of the unavailability to the Project at any time while this Agreement is in effect of any of the Section 8 Programs or the Rental Voucher Program of the Commonwealth of Massachusetts Owner will use best efforts to <u>secure assistance</u> under any other presently or subsequently enacted <u>federal or State</u> program under which low income person may be eligible for public assistance in paying for the cost of shelter. 25% of net income for rent for low income family.

**RHA**

## STANDARD FORM APARTMENT LEASE
### (FIXED TERM)

Date 6-7-96

Landmark
Real Estate

From the office of

Ardmore Apartments L.P., Lessor    c/o Landmark Real Estate    (617) 923-4461
(Name)

160 Belmont Street, Watertown, MA 02172
(Address)    (Telephone No.)

Lessor, hereby leases to   Oak-Hee Ruesch    (617) 863-6394

7321 Lexington Ridge Drive, Lexington, MA 02173
(Name)    (Address)    (Telephone No.)

Lessee, who hereby hires

the following premises, viz.:   (Apartment)    (Suite) # 302    at 4 Cedar Street

Wellesley, MA    (Street)
(City or town)    Mass. (consisting of)

a Kitchen, bathroom, living room and two bedroom

for the term of   one year   beginning   July 1, 1996   , 19

and terminating on   June 30, 1997   , The rent to be paid by the Lessee for the leased premises shall be as follows:

**RENT**

A: The term rent shall be $ $14,400.00 , payable, except as herein otherwise provided, in installments of $ $1,200.00
on the _____ day of every month, in advance, so long as this lease is in force and effect:

B: However, if in any tax year commencing with the fiscal year _____ the real estate taxes on the land and building, of which the leased premises are a part, are in excess of the amount of the real estate taxes thereon for the fiscal year _____ herein called the "Base Year", and being the most recent year in which Lessor has actually received a real estate tax bill for the leased premises, Lessee will pay to Lessor as additional rent hereunder, when and as designated by notice in writing by Lessor, _____ per cent of such excess that may occur in each year of the term of this Lease or any extension or renewal thereof and proportionately for any part of a fiscal year. The Lessor represents to the Lessee that the term rent set forth in the immediately preceding paragraph (A) does not reflect any real estate tax increase subsequent to the said Base Year. Notwithstanding anything contained herein to the contrary, the Lessee shall be obligated to pay only that proportion of such increased tax as the unit leased by him bears to the whole of the real estate so taxed, and if the Lessor obtains an abatement of the real estate tax levied on the whole of the real estate of which the unit leased by Lessee is a part, a proportionate share of such abatement, less reasonable attorney's fees, if any, shall be refunded to said Lessee.

C: Notwithstanding anything contained herein to the contrary, if the leased premises are or become subject to rent control laws or other laws regulating rents, the Lessee shall pay not more than the maximum rent allowed under such applicable rent control laws or other laws regulating rents.

D: If at any time after the date hereof the leased premises are or become subject to rent control laws or other laws regulating rents, and if the Lessor is, in accordance with such laws, at any time authorized or permitted to increase the rent for the leased premises, and if at any time thereafter the Lessor gives written notice of his intention to increase the rent for the leased premises, in part, then, in such event and not otherwise, the Lessee may terminate this lease by giving notice of his intention within thirty days after the Lessor's notice of implementation. If the Lessee gives such notice within thirty days, this lease shall terminate on the last day of the monthly rental period next after the date of such notice. If the Lessee does not give such notice within thirty days, then the rent shall be increased in accordance with the Lessor's notice of implementation commencing with the rent payment immediately following the expiration of said thirty day period, but in no event shall the rent exceed $ _____ per month during the term hereof.

**TENANT:**
This section governs Rent payments. In some cases, rent payments may increase during the lease term. Please be sure that you carefully read and understand this section. Please initial here when you understand and agree with this section.
Lessee's initials:

_____
_____

**LESSOR AND LESSEE FURTHER COVENANT AND AGREE:**
That during the term of this Lease and for such other and further period as the said Lessee shall occupy the said premises, all of the terms, covenants and conditions contained herein shall remain in full force and effect.

1. MAINTENANCE   For maintenance, if other than lessor, contact:   Bill Dillon  c/o Landmark Real Estate
pager (617) 458-8220

(Name)    (Address)    (Telephone No.)

2. ADDITIONAL PROVISIONS

(617) 923-4461

The attached Addendum is part of this lease agreement.

COPYRIGHT © 1978
GREATER BOSTON REAL ESTATE BOARD

All rights reserved. This form may not be copied or reproduced in whole or in part in any manner whatsoever without the prior express written consent of the Greater Boston Real Estate Board.

RECEIVED

DISTRICT COURT
DEDHAM DIVISION    FORM NO. 1B

*Left margin handwritten notes:* For the property. Because Clerk did not ask the proper q's Mrs. Ruesch unfortunately has no knowledge in before, during but we did not 5 sin this lease due to her dishonest[y]

**3. HEAT AND OTHER UTILITIES**

TENANT: This section governs utility payments. Be sure to discuss with the Lessor those payments which will be required of you for this apartment.

The Lessee shall ... as they become due, all bills for electricity and other utilities, whether they are used for furnishing heat or other pu..ses, that are furnished to the demised premises and presently separately metered. The Lessor agrees that he will furnish reasonably hot and cold water and reasonable heat (except to the extent that such water and heat are furnished through utilities metered to the demised premises as stated above) during the regular heating season, all in ac-cordance with applicable laws, but the failure of the Lessor to provide any of the foregoing items to any specific degree, quantity, quality, or character due to any causes beyond the reasonable control of the Lessor, such as accident, restriction by City, State or Federal regulations, or during necessary repairs to the apparatus shall not (subject to applicable law) form a basis of any claim for damages against the Lessor.

**4. ATTACHED FORMS**

The forms, if any, attached hereto are incorporated herein by reference.

**5. CARE OF PREMISES**

The Lessee shall not paint, decorate or otherwise embellish and/or change and shall not make nor suffer any additions or alterations to be made in or to the leased premises without the prior written consent of the Lessor, nor make nor suffer any strip or waste, nor suffer the heat or water to be wasted, and at the termination of this lease shall deliver up the leased premises and all property belonging to the Lessor in good, clean and tenantable order and condition, reasonable wear and tear excepted. No washing machine, air-conditioning unit, space heater, clothes dryer, television or other aerials, or other like equipment shall be installed without the prior written consent of the Lessor. No waterbeds shall be permitted in the leased premises.

**6. CLEANLINESS**

The Lessee shall maintain the leased premises in a clean condition. He shall not sweep, throw, or dispose of, nor permit to be swept, thrown or disposed of, from said premises nor from any doors, windows, balconies, porches or other parts of said building, any dirt, waste, rubbish or other substance or article into any other parts of said building or the land adjacent thereon, except in proper receptacles and except in accordance with the rules of the Lessor.

**7. DEFINITIONS**

The words "Lessor" and "Lessee" as used herein shall include their respective heirs, executors, administrators, successors, representatives and assigns, agents and servants; and the words "he," "his," and "him" where applicable shall apply to the Lessor or Lessee regardless of sex, number, corporate entity, trust or other body. If more than one party signs as Lessee hereunder, the covenants, conditions and agreements herein of the Lessee shall be the joint and several obligations of each such party.

**8. DELIVERY OF PREMISES**

In the event the Lessor is not able through no fault of his own to deliver the leased premises to the Lessee at the time called for herein, the rent shall be abated on a pro rata basis until such time as occupancy can be obtained, which abatement shall constitute full settlement of all damages caused by such delay, or the Lessor, at his election, shall be allowed reasonable time to deliver possession of the leased premises, and if he cannot deliver such possession within 30 days from the beginning of said term, either the Lessor or Lessee may then terminate this lease by giving written notice to the other and any payment made under this lease shall be forthwith refunded. Lessee hereby authorizes and empowers Lessor to institute proceedings to recover possession of the premises on behalf of and in the name of Lessee.

**9. EMINENT DOMAIN**

If the leased premises, or any part thereof, or the whole or any part of the building of which they are a part, shall be taken for any purpose by exercise of the power of eminent domain or condemnation, or by action of the city or other authorities or shall receive any direct or consequential damage for which the Lessor or Lessee shall be entitled to compensation by reason of anything lawfully done in pursuance of any public authority after the execution hereof and during said term, or any extension or renewal thereof, then at the option of either the Lessor or the Lessee, this lease and said term shall terminate and such option may be exercised in the case of any such taking, notwithstanding the entire interest of the Lessor and the Lessee may have been divested by such taking. Said option to terminate shall be exercised by either the Lessor or the Lessee, by giving a written notice of exercise of such option to terminate in the manner described in Section 17 of this lease. Said option to terminate shall not be exercised by either party (a) earlier than the effective date of taking, nor (b) later than thirty (30) days after the effective date of taking. The mailing of the notice of exercise as set forth hereinabove shall be deemed to be the exercise of said option; and upon the giving of such notice, this lease shall be terminated as of the date of the taking. If this lease and said term are not so terminated, then in case of any such taking or destruction of or damage to the leased premises, rendering the same or any part thereof unfit for use and occupation, a just proportion of the rent hereinbefore reserved, according to the nature and extent of the damage to the leased premises, shall be suspended or abated until, in the case of such taking, what may remain of the leased premises, shall have been put in proper condition for use and occupation. The Lessee hereby assigns to the Lessor any and all claims and demands for damages on account of any such taking or for compensation for anything lawfully done in pursuance of any public authority, and covenants with the Lessor that the Lessee will from time to time execute and deliver to the Lessor such further instruments of assignment of any such claims and demands as the Lessor shall request, provided however that the Lessee does not assign to the Lessor any claim based upon Lessee's personal property or other improvements installed by Lessee with Lessor's written permission.

**10. FIRE, OTHER CASUALTY**

If the leased premises, or any part thereof, or the whole or a substantial part of the building of which they are a part, shall be destroyed or damaged by fire or other casualty after the execution hereof and during said term, or any extension or renewal thereof, then this lease and said term shall terminate at the option of the Lessor by notice to the Lessee. If this lease and said term are not so terminated, then in case of any such destruction of or damage to the leased premises, or to the common areas of the building customarily used by the Lessee for access to and egress from the leased premises, rendering the same or any part thereof unfit for use and occupation, a just proportion of the rent hereinbefore reserved, according to the nature and extent of the damage to the leased premises, shall be suspended or abated until the leased premises shall have been put in proper condition for use and occupation. If the leased premises or such common areas have not been restored by the Lessor to substantially their former condition for use and occupancy within thirty days after the damage occurred, the Lessee may terminate this lease by giving notice to the Lessor within thirty days following the termination of the thirty day period within which the Lessor failed to restore. If either party gives notice of intention to terminate under this section, this lease shall terminate on the last day of the then-current monthly rental period.

**11. DISTURBANCE, ILLEGAL USE**

Neither the Lessee nor his family, friends, relatives, invitees, visitors, agents or servants shall make or suffer any unlawful, noisy or otherwise offensive use of the leased premises, nor commit or permit any nuisance to exist thereon, nor cause damage to the leased premises, nor create any substantial interference with the rights, comfort, safety or enjoyment of the Lessor or other occupants of the same or any other apartment, nor make any use whatsoever thereof than as and for a private residence. No articles shall be hung or shaken from the windows, doors, porches, balconies, or placed upon the exterior windowsills.

**12. GOVERNMENTAL REGULATIONS**

The Lessor shall be obligated to fulfill all of the Lessor's obligations hereunder to the best of the Lessor's ability but the Lessee's obligations, covenants and agreements hereunder shall not (subject to applicable law) be affected, impaired or ex-cused because the Lessor is unable to supply or is delayed in supplying any service or is unable to make or is delayed in making any repairs, additions, alterations or decorations, or is unable to supply or is delayed in supplying any equipment or fixtures, if Lessor is prevented or delayed from so doing because of any law or governmental action or any order, rule or regulation of any governmental agency, (other than those regulating rents) which is beyond the Lessor's reasonable control.

**13. COMMON AREAS**

No receptacles, ~~~les~~, baby carriages or other articles or obstructions ~~~ ~~~ be placed in the halls or other common areas or passageways.

**14. INSURANCE**

Lessee understands and agrees that it shall be Lessee's own obligation to insure his personal property.

**15. KEYS AND LOCKS**

Upon expiration or termination of the lease, the Lessee shall deliver the keys of the premises to the landlord. Delivery of keys by the Lessee to the Lessor, or to anyone on his behalf, shall not constitute a surrender or acceptance of surrender of the leased premises unless so stipulated in writing by the Lessor. In the event that the exterior door lock or locks in the leased premises are not in normal working order at any time during the term hereof, and if the Lessee reports such condition to the Lessor, then and in that event, the Lessor shall, within a reasonable period of time following receipt of notice from the Lessee of such condition, repair or replace such lock or locks. Locks shall not be changed, altered, or replaced nor shall new locks be added by the Lessee without the written permission of the Lessor. Any locks so permitted to be installed shall become the property of the Lessor and shall not be removed by the Lessee. The Lessee shall promptly give a duplicate key to any such changed, altered, replaced or new lock to the Lessor.

**16. LOSS OR DAMAGE**

The Lessee agrees to indemnify and save the Lessor harmless from all liability, loss or damage arising from any nuisance made or suffered on the leased premises by the Lessee, his family, friends, relatives, invitees, visitors, agents, or servants or from any carelessness, neglect or improper conduct of any of such persons. All personal property in any part of the building within the control of the Lessee shall be at the sole risk of the Lessee. Subject to provisions of applicable law the Lessor shall not be liable for damage to or loss of property of any kind which may be lost or stolen, damaged or destroyed by fire, water, steam, defective refrigeration, elevators, or otherwise, while on the leased premises or in any storage space in the building or for any personal injury unless caused by the negligence of the Lessor.

**17. NOTICES**

Written notice from the Lessor to the Lessee shall be deemed to have been properly given if mailed by registered or certified mail, postage prepaid, return receipt requested to the Lessee at the address of the leased premises, or if delivered or left in or on any part thereof, provided that if so mailed, the receipt has been signed, or if so delivered or left, that such notice has been delivered to or left with, the Lessee or anyone expressly or impliedly authorized to receive messages for the Lessee, or by any adult who resides with the Lessee in the leased premises. Written notice from the Lessee to the Lessor shall be deemed to have been properly given if mailed by registered or certified mail, postage prepaid, return receipt requested, to the Lessor at his address set forth in the first paragraph of this lease, unless the Lessor shall have notified the Lessee of a change of the Lessor's address, in which case such notice shall be so sent to such changed address of the Lessor, provided that the receipt has been signed by the Lessor or anyone expressly or impliedly authorized to receive messages for the Lessor. *Notwithstanding the foregoing, notice by either party to the other shall be deemed adequate if given in any other manner authorized by law.*

**18. OTHER REGULATIONS**

The Lessee agrees to conform to such lawful rules and regulations which are reasonably related to the purpose and provisions of this lease, as shall from time to time be established by the Lessor in the future for the safety, care, cleanliness, or orderly conduct of the leased premises and the building of which they are a part, and for the benefit, safety, comfort and convenience of all the occupants of said building.

**19. PARKING**

Parking on the premises of the Lessor is prohibited unless written consent is given by the Lessor.

**20. PETS**

No dogs or other animals, birds or pets shall be kept in or upon the leased premises without the Lessor's written consent; and consent so given may be revoked at any time.

**21. PLUMBING**

The water closets, disposals, and waste pipes shall not be used for any purposes other than those for which they were constructed, nor shall any sweepings, rubbish, rags, or any other improper articles be thrown into the same; and any damage to the building caused by the misuse of such equipment shall be borne by the Lessee by whom or upon whose premises it shall have been caused, unless caused by the negligence of the Lessor, or by the negligence of an independent contractor employed by the Lessor.

**22. REPAIRS**

The Lessee agrees with the Lessor that, during this lease and for such further time as the Lessee shall hold the leased premises or any part thereof, the Lessee will at all times keep and maintain the leased premises and all equipment and fixtures therein or used therewith repaired, whole and of the same kind, quality and description and in such good repair, order and condition as the same are at the beginning of, or may be put in during the term or any extension or renewal thereof, reasonable wear and tear and damage by unavoidable casualty only excepted. The Lessor and the Lessee agree to comply with any responsibility which either may have under applicable law to perform repairs upon the leased premises. If Lessee fails within a reasonable time, or improperly makes such repairs, then and in any such event or events, the Lessor may (but shall not be obligated to] make such repairs and the Lessee shall reimburse the Lessor for the reasonable cost of such repairs in full, upon demand.

**23. RIGHT OF ENTRY**

The Lessor may enter upon the leased premises to make repairs thereto, to inspect the premises, or to show the premises to prospective tenants, purchasers, or mortgagees. The Lessor may also enter upon the said premises if same appear to have been abandoned by the Lessee or as otherwise permitted by law.

**24. NON-PERFORMANCE OR BREACH BY LESSEE**

If the Lessee shall fail to comply with any lawful term, condition, covenant, obligation, or agreement expressed herein or implied hereunder, or if the Lessee shall be declared bankrupt, or insolvent according to law or if any assignment of the Lessee's property shall be made for the benefit of creditors, or if the premises appear to be abandoned then, and in any of the said cases and notwithstanding any license or waiver of any prior breach of any of the said terms, conditions, covenants, obligations, or agreements, the Lessor, without necessity or requirement of making any entry may (subject to the Lessee's rights under applicable law) terminate this lease by:

1. a seven (7) day written notice to the Lessee to vacate said leased premises in case of any breach except only for non-payment of rent, or
2. a fourteen (14) day written notice to the Lessee to vacate said leased premises upon the neglect or refusal of the Lessee to pay the rent as herein provided.

Any termination under this section shall be without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of any of the said terms, conditions, covenants, obligations or agreements.

**25. LESSEE'S COVENANTS IN EVENT OF TERMINATION**

The Lessee covenants that in case of any termination of this lease, by reason of the default of the Lessee, then at the option of Lessor:

(A) the Lessee will forthwith pay to the Lessor as damages hereunder a sum equal to the amount by which the rent and other payments called for hereunder for the remainder of the term or any extension or renewal thereof exceed the fair rental value of said premises for the remainder of the term or any extension or renewal thereof; and

(B) the Lessee covenants that he will furthermore indemnify the Lessor from and against any loss and damage sustained by reason of any termination caused by the default of, or the breach by, the Lessee. Lessor's damages hereunder shall include, but shall not be limited to any loss of rents; reasonable broker's commissions for the re-letting of the leased premises; advertising costs; the reasonable cost incurred in cleaning and repainting the premises in order to re-let the same; and moving and storage charges incurred by Lessor in moving Lessee's belongings pursuant to eviction proceedings.

(C)   At the option of Lessor, however, Lessor's cause of action under this article shall accrue when a new tenancy or lease term first commences subsequent to a termination under this lease, in which event Lessor's damages shall be limited to any and all damages sustained by him prior to said new tenancy or lease date.

Lessor shall also be entitled to any and all other remedies provided by law. All rights and remedies are to be cumulative and not exclusive.

**26. REMOVAL OF GOODS**

Lessee further covenants and agrees that if Lessor shall remove Lessee's goods or effects, pursuant to the terms hereof or of any Court order, Lessor shall not be liable or responsible for any loss of or damage to Lessee's goods or effects and the Lessor's act of so removing such goods or effects shall be deemed to be the act of and for the account of Lessee, provided, however, that if the Lessor removes the Lessee's goods or effects, he shall comply with all applicable laws, and shall exercise due care in the handling of such goods to the fullest practical extent under the circumstances.

**27. NON-SURRENDER**

Neither the vacating of the premises by Lessee, nor the delivery of keys to the Lessor shall be deemed a surrender or an acceptance of surrender of the leased premises, unless so stipulated in writing by Lessor.

**28. SUBLETTING, NUMBER OF OCCUPANTS**

The Lessee shall not assign nor underlet any part or the whole of the leased premises, nor shall permit the leased premises to be occupied for a period longer than a temporary visit by anyone *except the individuals specifically named in the first paragraph of this lease,* their spouses, and any children born to them during the term of this lease or any extension or renewal thereof without first obtaining on each occasion the assent in writing of the Lessor.

**29. TRUSTEE**

In the event that the Lessor is a trustee or a partnership, no such trustee nor any beneficiary nor any shareholder of said trust and no partner, General or Limited, of such partnership shall be personally liable to anyone under any term, condition, covenant, obligation, or agreement expressed herein or implied hereunder or for any claim of damage or cause at law or in equity arising out of the occupancy of said leased premises, the use or the maintenance of said building or its approaches and equipment.

**30. WAIVER**

The waiver of one breach of any term, condition, covenant, obligation, or agreement of this lease shall not be considered to be a waiver of that or any other term, condition, covenant, obligation, or agreement or of any subsequent breach thereof.

**31. SEPARABILITY CLAUSE**

If any provision of this lease or portion of such provision or the application therof to any person or circumstance is held invalid, the remainder of the lease (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

**32. COPY OF LEASE**

The Lessor shall deliver a copy of this lease, duly executed by Lessor or his authorized agent, to the Lessee within thirty (30) days after a copy hereof, duly executed by the Lessee, has been delivered to the Lessor.

**33. REPRISALS PROHIBITED**

The Lessor acknowledges that provisions of applicable law forbid a landlord from threatening to take or taking reprisals against any tenant for seeking to assert his legal rights.

IN WITNESS WHEREOF, the said parties hereunto and to another instrument of like tenor, have set their hands and seals on the day and year first above written; and Lessee as an individual states under the pains and penalties of perjury that said Lessee is over the age of 18 years.

_____
Lessee

_____
Lessor

_____
Trustee or Agent

TENANT:  SUBJECT TO APPLICABLE LAW, THE LANDLORD WILL PROVIDE INSURANCE FOR UP TO $750 IN BENEFITS TO COVER THE ACTUAL COSTS OF RELOCATION OF THE TENANT IF DISPLACED BY FIRE OR DAMAGE RESULTING FROM FIRE.

TENANT:  MAKE SURE TO RECEIVE A SIGNED COPY OF THIS LEASE.

In consideration of the execution of the within lease by the Lessor at the request of the undersigned and of one dollar paid to the undersigned by the Lessor, the undersigned hereby, jointly and severally, guarantee to the Lessor, and the heirs, successors, and assigns of the Lessor, the punctual performance by the Lessee and the legal representatives, successors and assigns of the Lessee of all the terms, conditions, covenants, obligations and agreements in said lease on the Lessee's or their part to be performed or observed, demand and notice of default being hereby waived. The undersigned waive all surety-ship defenses and defenses in the nature thereof and assent to any and all extensions and postponements of the time of payment and all other indulgences and forebearances which may be granted from time to time to the Lessee.
WITNESS the execution hereof under seal by the undersigned the day and year first written in said lease.

_____

_____

_____

RECEIVED

1995

DISTRICT COURT

ADOPTED BY THE RENTAL HOUSING ASSOCIATION OF THE GREATER BOSTON REAL ESTATE BOARD

ADDENDUM TO    ASE BETWEEN OAK-HEE RUESCH, THE LESSEE, AND
THE ARDMORE APARTMENTS L.P., THE LESSOR , FOR APARTMENT # 302 AT
4 CEDAR STREET, WELLESLEY

1.  Lessee(s) are jointly and severally responsible for the payment of rent.

2.  Lessee(s) agree to pay $30 for any check that does not clear on the first deposit.

3.  Lessee(s) understand that pets are not allowed on the premises.

4.  Waterbeds are not allowed on the premises unless the Lessor is given a copy of a prepaid insurance policy which names the Lessor as the beneficiary.

5.  Lessee(s) agree to maintain their apartment and the common areas in good condition.  Lessor will clean & shampoo the carpet, clean the entire apartment, and paint the apartment before the Lessee moves in.

6.  Lessee(s) agree to use the parking space(s) designated by the Lessor.  Visitors must use the "visitor spaces" or park off the premises.  Lessee(s) will cooperate with the Lessor during snowstorms to make it easier to plow the parking lot during and after snowstorms.

7.  Lessee(s) will pay a $20 key deposit which will be returned by the Lessor only if all keys have been returned to the Lessor.  Any changes in locks, etc. will be done by the Lessor's locksmith.

8.  During the last 45 days of this lease, if the Lessee has not extended the term of the lease in writing, the Lessor has the Lessee's permission to show the premises to prospective tenants.

9.  The Lessee will pay one month's rent to be used as the last month's rent. If the Lessee needs to terminate this lease agreement before its expiration, the Lessee can do so by notifying the Lessor at least 45 days in advance from the first of any month and by simultaneously paying the Lessor $500.00 as a "lease termination fee" to cover the cost of advertising the apartment for rent, showing the apartment, preparing new lease agreements, interviewing prospective new tenants, and reviewing their creditworthiness, etc.

11. Lessee will pay the last month's rent upon signing this lease.  Lessor will pay interest as required by law on this deposit.

AGREED TO:                                          6/10/96

_____          _____
Oak-Hee Ruesch, Lessee    (date)          Ardmore Apartments, L.P.  Lessor
(date)

RECEIVED

DISTRICT COURT



COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

FINAL DISPOSITION: **WITHDRAWAL WITH SETTLEMENT**

Complaint No: 00-15-0481, MCAD, 01-00-0296-8, HUD
Comp. v. Resp: Oak-Hee Ruesch v. Wellesley Housing Authority
Commr. Douglas T. Schwarz
Invest. Andrea E. Sunday

Reasons for Disposition:

On March 2, 2000, the Complainant filed a complaint with this Commission alleging that on December 31, 1999, she was discriminated against in terms and conditions of housing based on her disability (mental illness), in violation of MGL Chapter 151B Section 4 Paragraph 16 and Title VIII of the Civil Rights Act of 1968 as amended.

Respondent was served with the complaint. On April 6, 2000, Respondent provided its position responding to the charges of discrimination. Respondent denied discriminating against the Complainant as charged. On April 18, 2000, the Respondent *incorrect* offered to settle the complaint with the Complainant. The Complainant agreed to the Respondent's offer of settlement and requested in writing to withdraw her complaint from *not true* MCAD and HUD. The Complainant was offered a subsidized, one-bedroom unit at Respondent's elderly housing complex. Therefore, it is recommended that the request be granted.

_Andrea Sunday_
Andrea E. Sunday
Investigator

_Victor Posada_
Victor Posada
Supervisor

Disposition: **Withdrawal with settlement**

Signed this _27th_ day of _April_ 2000.

_Douglas T. Schwarz_
Douglas T. Schwarz
INVESTIGATING COMMISSIONER

_19_

[EXIBIT]



# THE COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION
### ONE ASHBURTON PLACE, BOSTON, MA 02108-1518



Argeo Paul Cellucci
Governor

Jane Swift
Lieutenant Governor

Andrew S. Natsios
Secretary

Charles E. Walker, Jr.
Chairman

Douglas T. Schwarz
Commissioner

Dorca I. Goméz
Commissioner

DATE: 5|1|00

Oak-Hee Ruesch
Pine Street Inn
363 Albany Street
Boston, MA 02118

**RE: Ruesch v. Wellesley Housing Authority**
   **NO: MCAD, 00-15-0481**
      **HUD, 01-00-0296-8**

## WITHDRAWAL WITH SETTLEMENT

Dear Ms. Ruesch:

   You are hereby notified that your request to withdraw the Complaint referred to above has been granted.

          Very truly yours,

          Douglas T. Schwarz
          INVESTIGATING COMMISSIONER

cc:    Louis M. Malerba, Jr.
       Executive Director
       Wellesley Housing Authority
       100 Barton Road
       Wellesley, MA 02181

Tel: (617) 727-3990        TTY: (617) 720-6054        Fax: (617) 720-6053

# WELLESLEY HOUSING AUTHORITY

### 109 BARTON ROAD, WELLESLEY HILLS, MA 02481

**COPY**

EXIBIT 5

FAMILY HOUSING
BARTON ROAD
WELLESLEY HILLS, MA

FAMILY HOUSING
LINDEN STREET
WELLESLEY, MA

RENTAL ASSISTANCE

OFFICE (781) 235-0223
FAX (781) 239-0802

ELDERLY/DISABLED HOUSING
MORTON CIRCLE
KILMAIN HOUSE
DEAN HOUSE
LIST HOUSE
WELLESLEY, MA

July 25, 2000

Andrea E. Sunday
Investigator
The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Suite 601
Boston, MA.  02108

RE: Oak-Hee Reusch v. Wellesley Housing Authority
    MCAD NO: 00152026    HUD NO: 01-00-0423-8

Dear Ms. Sunday:

The following is the Position Statement of the Wellesley Housing Authority
in the discrimination case filed by Oak-Hee Ruesch of 315 Weston Road, Apt.
A-3, Wellesley, MA.

Please be advised that at no time did the Wellesley Housing Authority discriminate
against Oak-Hee Reusch on the basis of her disability or for any other reason.

Ms. Reusch was evicted from her apartment by FIC Management, Inc. for non-payment
of rent.  Not by the Wellesley Housing Authority.

The WHA's position has always been that it had redetermined Ms. Reusch's rent
in accordance with the Commonwealth of Massachusetts, Mass. Rental Voucher
Programs Rules and Regulations and that Ms. Reusch was informed as to her share
of the rent to FIC Management, Inc. *Shows no change of my request made.*

Lastly, the WHA has provided Ms. Reusch with proper accomodations in accordance
with the settlement of her discrimination claim filed earlier on March 2, 2000.
In my discussion with you and Ms. Reusch it was agreed upon by both MCAD and
Ms. Reusch in a letter signed and dated on April 19, 2000 that the issue that
initiated the complaint has been resolved and the Wellesley Housing Authority
has offered and Ms. Reusch has accepted a subsidized, 1-bedroom apartment in
elderly development at Weston Road.

I hope to hear from you on your return on July 31, 2000 so that we may discuss
this claim again and try to settle the claim before the hearing scheduled for
August 2, 2000.

Sincerely,

Louis M. Malerba, Jr.
Executive Director

cc: Oak-Hee Reusch
    James Goodhue, Attorney for WHA

AFFIRMATIVE ACTION/EQUAL OPPORTUNITY HOUSING

WELLESLEY HOUSING AUTHORITY

109 BARTON ROAD, WELLESLEY HILLS, MA 02481

**COPY**

EXIBIT 5

FAMILY HOUSING
BARTON ROAD
WELLESLEY HILLS, MA

FAMILY HOUSING
LINDEN STREET
WELLESLEY, MA

RENTAL ASSISTANCE

OFFICE (781) 235-0223
FAX (781) 239-0802

ELDERLY/DISABLED HOUSING
MORTON CIRCLE
KILMAIN HOUSE
DEAN HOUSE
LIST HOUSE
WELLESLEY, MA

July 25, 2000

Andrea E. Sunday
Investigator
The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Suite 601
Boston, MA.  02108

RE: Oak-Hee Reusch v. Wellesley Housing Authority
    MCAD NO: 00152026    HUD NO: 01-00-0423-8

Dear Ms. Sunday:

The following is the Position Statement of the Wellesley Housing Authority
in the discrimination case filed by Oak-Hee Ruesch of 315 Weston Road, Apt.
A-3, Wellesley, MA.

Please be advised that at no time did the Wellesley Housing Authority discriminate
against Oak-Hee Reusch on the basis of her disability or for any other reason.

Ms. Reusch was evicted from her apartment by FIC Management, Inc. for non-payment
of rent.  Not by the Wellesley Housing Authority.

The WHA's position has always been that it had redetermined Ms. Reusch's rent
in accordance with the Commonwealth of Massachusetts, Mass. Rental Voucher
Programs Rules and Regulations and that Ms. Reusch was informed as to her share
of the rent to FIC Management, Inc. Shows no change of my request made

Lastly, the WHA has provided Ms. Reusch with proper accomodations in accordance
with the settlement of her discrimination claim filed earlier on March 2, 2000.
In my discussion with you and Ms. Reusch it was agreed upon by both MCAD and
Ms. Reusch in a letter signed and dated on April 19, 2000 that the issue that
initiated the complaint has been resolved and the Wellesley Housing Authority
has offered and Ms. Reusch has accepted a subsidized, 1-bedroom apartment in
elderly development at Weston Road.

I hope to hear from you on your return on July 31, 2000 so that we may discuss
this claim again and try to settle the claim before the hearing scheduled for
August 2, 2000.

Sincerely,

Louis M. Malerba, Jr.
Executive Director

cc: Oak-Hee Reusch    AFFIRMATIVE ACTION/EQUAL OPPORTUNITY HOUSING
    James Goodhue, Attorney for WHA

(EXBIT 1)

# South Middlesex Legal Services, Inc.

354 Waverly Street • Framingham • MA 01702 • 508-620-1830 (TDD) • 800-696-1501 • FAX 508-620-2323

July 5, 2001

By Hand

Louis Mallerba, Jr.
Executive Director
Wellesley Housing Authority
109 Barton Road
Wellesley, MA 02481

Dear Mr. Mallerba:

Enclosed are copies of the receipts submitted to me by Ms. Reusch. The ones bound by the rubber band are for the period since the inception of her tenancy with the Wellesley Housing Authority. The others are for previous periods and are submitted for the purpose of demonstrating that Ms. Reusch's current expenses are fairly consistent with those from prior to her tenancy. As we discussed, Ms. Reusch is requesting that you use the receipts to recalculate her share of the monthly rent retroactively, allowing for medical expense deductions from her income consistent with the March 1, 2001 letter from Dr. Castells (copy attached).

I will be on vacation until July 17th. Please contact me as soon as possible beyond that date so that we can proceed with negotiations in the Summary Process, now rescheduled for trial on July 26th. Thank you for your ongoing cooperation in connection with this matter.

Very truly yours,

Robert L. Bowens
Staff Attorney

Enclosure

cc:    Oak-hee Reusch

Exhibit 5



BRIGHAM AND
WOMEN'S HOSPITAL

850 Boylston Street, Suite 540
Chestnut Hill, Massachusetts 02467
Tel: 617 278-0300, Fax: 617 731-2748

**Allergy Department**

Patient: RUESCH,OAKHEE   MRN: 09976549(BWH)
Author: Castells, Maria Concepcion, M.D.

Status: Preliminary
Visit Date:03/01/2001

To Whom It May Concern:

Our patient, Ms. Oakhee Ruesch, is seen here in the Allergy and Clinical Immunology Division at the Brigham and Women's Hospital.

The patient has been diagnosed with multiple chemical disorder. She also has contact dermatitis as well as perennial allergic rhinitis and conjunctivitis. The patient, at this point, has a minimal amount of expenses for food and others to include $382.50, and her source of organic foods amounts to $460.00. A detailed budget is attached to this letter. This amounts to a total of $800.00 which the patient must spend monthly. In addition to that, the patient needs to spend another $10,000 for reasonable control of her living environmental during the year. Her expenses, to a certain extent, are unpredictable and she sometimes has the need to buy expensive items because her sensitivities preclude her from using cheaper items.

The patient has been evaluated by multiple doctors here in this Division as well as in other hospitals, and all have attested to her diagnosis of multiple chemical sensitivity disorder. In fact, the patient is functionally disabled and there is only one widely known study in her disease written by Dr. Nicholas Ashford and Claudia Miller on chemical exposure indicating that the disease is poorly understood and that the patients suffer emotional and physical stress when exposed to environmental chemicals that are perceived as difficult and hostile. The authors of the book substantiate that the multiple chemical sensitivity syndrome has an organic basis and it can also manifest severe posttraumatic stress syndrome, and the patients have inability to function in the current world unless they are able to buy substances and foods that they do not react to.

Ms. Oakhee Ruesch has been able to identify foods and items that do not give her reactions, and again, those are included in the list of her expenses on a monthly basis. We feel Ms. Ruesch would be unable to function otherwise and it is impossible for her to make any increased payments at this point since her income is limited.

Ruesch, Oakhee
MR# 09976549
March 1, 2001
Page Two

Please let me know if there is any further information that you need.

Sincerely yours,

Mariana Castells, M.D.
/lm

*Exhibit 4*

*☑ Ozk-hee: I sent this to Louis Melerba*



**Action for Boston Community Development Inc.**

178 TREMONT STREET, BOSTON, MASSACHUSETTS 02111-1093
TELEPHONE: (617) 357-6000 TTY: (617) 423-9215 FAX: (617) 357-6041

Wellesley Housing Authority
109 Barton Road
Wellesley Hills, MA 02481

RE:    **Ms. Oak-Hee Ruesch**                                                May 16, 2001
       **315 Western Road, #A3**

Dear Sir or Madam:

I am writing on behalf of my client, Ms. Oak-Hee Ruesch. Ms. Ruesch is disabled and has been diagnosed with Multiple Chemical Sensitivity, a disorder that causes her to experience extreme environmental intolerances. This disorder requires Ms. Ruesch to request the following accommodations in her housing:

1. The removal of all carpeted surfaces in her apartment;
2. Good ventilation in her apartment, such as is possible with two working windows providing cross-ventilation. If this is not possible, Ms. Ruesch would require an air purifier and humidifier;
3. No heating with forced air, as radiant heat is a healthier option for her;
4. Limiting pollution sources—specifically moving her to an apartment that is not facing a heavily trafficked roadway; and
5. Placing weather stripping on windows and doors to limit exposure to chemical products from neighbors and the surrounding area.

I have enclosed a letter from Doctor Susan Korrick, Ms. Ruesch's occupational and environmental physician. I have also enclosed a prescription for an air purifier and humidifier. Dr. Mariana Castells, Ms. Ruesch's allergy physician, signed this prescription.

Additionally, Ms. Ruesch would like to request that her rent be recalculated, as her current rental amount fails to take her special dietary concerns into account. I have enclosed a letter from Dr. Castells that details Ms. Ruesch's dietary needs.

Please feel free to contact me if you would like to schedule an appointment to review this matter. My telephone number is 617-357-6000, x. 457.

Sincerely,

Sarah Gunn
SHP Program Supervisor

*Exibit3*

THELMA D. BURNS, *Chair*; JEANETTE BOONE, *Vice Chair*; REGINALD BROTHERS, *Vice Chair*; KATHLEEN FLYNN, *Vice Chair*;
NORMA W. GRAMER, *Vice Chair*; STANLEY N. WILLIAMS, *Vice Chair*;
JEAN M. BABCOCK, *Treasurer*; MARK V. NUCCIO, ESQ., *Clerk*; ROBERT M. COARD, *President/CEO*

GRINDLE, ROBINSON & GOODHUE
ATTORNEYS AT LAW
40 GROVE STREET • SUITE 190
WELLESLEY, MASSACHUSETTS 02482-7720

ALBERT S. ROBINSON
STEVEN H. GRINDLE
JAMES A. GOODHUE
—
OF COUNSEL
RALPH C. COPELAND

TELEPHONE
(781) 235-3300

TELECOPIER
(781) 235-8090

DEDHAM DISTRICT COURT
2002 JUN 14 A 11: 16

June 13, 2002

Clerk, Civil Business
Dedham District Court
631 High Street
Dedham, MA  02026

   RE: Wellesley Housing Authority
   vs. Oak Hee Ruesch
     Docket No. 02 54 CV 0583

Dear Sir/Madam:

  Per conversation this morning, this shall confirm that the parties shall disregard the Notice of Civil Disposition dated June 10, 2002, and that the hearing on this matter is continued by agreement of the parties to July 18, 2002 at 10:00 a.m.

  Thank you for your assistance in this matter, and if you have any questions, please do not hesitate to contact me.

      Very truly yours,

      James A. Goodhue

cc: Louis M. Malerba, Jr., Executive Director
  Oak Hee Ruesch

JAG/dmr/#WHA-103
asr\welhous\evictions\Oak Hee Ruesch\court

# Trial Court Of The Commonwealth

### District Court Department
### Dedham Division
#### 631 High Street
#### Dedham, Massachusetts 02026

*Norfolk, ss.*                                        Civil Action No. 0254SU0583

**Wellesley Housing Authority**

*Plaintiff(s)*                                  **Summary Process**
                                                **Judgment**
~~VS.~~                                          ~~Rule 58~~

**Oak Hce Ruesch**
*Defendant(s)*

Upon trial, it has been ORDERED and ADJUDGED by the court, **Alch, J.,**

That the Plaintiff, Wellesley Housing Authority

recover of the Defendant, Oak Hee Ruesch

possession of the premises located at 315 Weston Rd. Apt. #A-3, Wellesley, MA. 02492

With damages in the amount of **$1,532.95**

and costs in the amount of  $131.00

**Execution For Possession to Issue on October 31, 2002.**

_____
Asst. Clerk/Magistrate

**7-19-02**
*(Date)*

Judgment entered on docket on 7/19/02 pursuant to Rules 58(a) and 79(a)
and a copy thereof sent to the parties immediately, as notice pursuant
Rule 77(d).

This form prescribed by the Chief Justice of The District Courts

| | DATE FILED | TIME STANDARDS: TRIAL REQUEST DEADLINE | DOCKET NUMBER |
|---|---|---|---|

**Trial Court of Massachusetts
District Court Department**

DATE FILED
5-28-02

DOCKET NUMBER
02-54-SU-0583

PLAINTIFF
Wellesley Housing Authority

DEFENDANT
Oak Hee Ruesch
315 Weston Rd.
Apt #A-3,
Wellesley, MA.  02492

Dedham District Court
631 High Street
P.O. Box 109
Dedham, Ma. 02026

PLAINTIFF ATTORNEY
James A. Goodhue, Esq.
Grindle, Robinson & Goodhue
40 Grove Street-Suite 190
Wellesley, MA. 02182-7720

DEFENDANT ATTORNEY

| MONEY DAMAGE ACTION (TIME STANDARDS) | | SUMMARY PROCESS | VICTIM VIOLENT CRIME | OTHER CIVIL |
|---|---|---|---|---|
| ☐ Remand | ☐ District Court Filing | ☐ | ☐ | ☐ |

## EXECUTION

**TO THE SHERIFFS OF THE SEVERAL COUNTIES** of the Commonwealth or their Deputies, or any Constable of any City or Town within the Commonwealth:

Whereas the above named plaintiff recovered judgment against the defendant, entered on the date and in the amount shown below,

WE COMMAND you therefore, that of the property, personal and real, lands and tenements, of the said judgment debtor, found within the territorial limits of your jurisdiction as provided by law, and consistent with any other jurisdictional limits so provided, you cause to be paid and satisfied unto the said judgment creditor, at the value thereof, in money, the aforesaid sums, with interest thereon from the date of this writ to the date of payment of the said judgment, and thereof also to satisfy yourself for your own fees.

HEREOF fail not, and make return of this writ, with your doings thereon or attached thereto into the Clerk-Magistrate's office of our said Court, at the address set forth above, within twenty years after the date of the said judgment, or within ten days after this writ has been satisfied or discharged.

| FIRST JUSTICE | DATE OF ISSUE | CLERK-MAGISTRATE |
|---|---|---|
| WITNESS  Gerald Alch | 8-31-02 | X _____ |

OFFICER'S RETURN

DATE OF SERVICE:
10/28/02

Fees _____

*A true copy
Attest!
[signature] Julin
Constable of Wellesley*
SIGNATURE

TOTAL FEES _____

DATE OF ENTRY OF JUDGMENT
7-19-02

☐ CIVIL          ☒ SUMMARY PROCESS

☒ Judgment for ___Plaintiff___

☒ $1,532.95 damages, plus $ _-0-_ prejudgment interest and $ _131.00_ costs
plus $ _-0-_ interest from date of judgment entry to date of execution

☒ Possession 315 Weston Rd. Apt #A-3, Wellesley, MA. 02492   Execution For Possession
                                                              Expires on 1-31-03

☐ Judgment on defendant's counterclaim for _____
☐ $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
interest from date of judgment entry to

| Trial Court of Massachuse / District Court Department | | DATE FILED 5-28-02 | TIME STANDARDS TRIAL REQUEST DEADLINE | DOCKET NUMBER 02-54-SU-0583 |

**PLAINTIFF**
Wellesley Housing Authority

**DEFENDANT**
Oak Hee Ruesch
315 Weston Rd.
Apt #A-3,
Wellesley, MA.  02492

Dedham District Court
631 High Street
P.O. Box 109
Dedham, Ma. 02026

**PLAINTIFF ATTORNEY**
James A. Goodhue, Esq.
Grindle, Robinson & Goodhue
40 Grove Street-Suite 190
Wellesley, MA. 02182-7720

**DEFENDANT ATTORNEY**

MONEY DAMAGE ACTION (TIME STANDARDS)
☐ Remand    ☐ District Court Filing

☐ SUMMARY PROCESS    ☐ VICTIM VIOLENT CRIME    ☐ OTHER CIVIL

| NO. | DATE | DOCKET ENTRIES |
|-----|------|----------------|
| 1. | | Complaint filed    ☐ Statement of damages filed (if applicable) |
| 2. | | |
| | | |
| | | |
| | | |
| | 8-31-02 | Execution for Possession & Damages Issued |

DATE OF ENTRY OF JUDGMENT
7-19-02              ☐ CIVIL              ☒ SUMMARY PROCESS

☒ Judgment for ___Plaintiff___.

☒ $1,532.95 damages, plus $ _-0-_ prejudgment interest and $ _131.00_ costs
plus $ _-0-_ interest from date of judgment entry to date of execution

**JUDGMENT TOTAL**
$ 1,532.95

☒ Possession 315 Weston Rd. Apt #A-3, Wellesley, MA. 02492  Execution For Possession Expires on 1-31-03

**EXECUTION TOTAL**
$ 1,663.95

☐ Judgment on defendant's counterclaim for _____
☐ $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
plus $ _____ interest from date of judgment entry to date of execution

**COUNTERCLAIM JUDGMENT TOTAL**
$ _____

**COUNTERCLAIM EXECUTION TOTAL**

760 CMR:  DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

49.04:  continued

(2)  In the event of a vacancy in a Low-Income Set Aside Unit, there shall be a marketing effort by the Owner or the Owner's Agent to attract MRVP Voucher Holders and holders of federal Section 8 subsidies to fill the vacancy.  Written notification of the vacancy shall be given by the Owner to regional LHAs as a part of such marketing effort.

49.05:  Determination of the Value of the Voucher

(1)  In determining the value of the Mobile Voucher for each Participant in the MRVP, the LHA shall establish each Participant's net income as defined in 760 CMR 49.05(7). A Participant's Mobile Voucher value shall be established in accordance with a schedule published from time to time by the Department.  This schedule shall set out various categories of Voucher amount based upon considerations of income, household size and composition, and geographic location of the Contract Unit.  The Department may also establish a minimum amount for a Mobile Voucher.  Appropriate unit size shall be determined on the basis of the size and composition of the Participant's household in accordance with the definition in 760 CMR 5.03.

(2)  For the purpose of determining the value of the Mobile Voucher, the Commonwealth shall be divided into various geographical regions which shall be determined by the Department. The value of a Participant's Voucher may vary from region to region.

(3)  There shall be no maximum percentage applicable to the amount of income paid for rent by each MRVP Participant holding a Mobile Voucher. Such a Participant shall pay a minimum of 30% of net household income toward rent.

(4)  When the value of the Mobile Voucher has been determined in accordance with 760 CMR 49.05(1), a Voucher Payment will be sent each month to the Owner of the Contract Unit in which the Participant lives, or to the Owner's Agent, and the remainder of the Contract Rent shall be paid to the Owner or the Owner's Agent by the Participant.

(5)  Participants residing in Project Based Units shall have their net income determined in accordance with 760 CMR 49.05(7).  LHAs shall determine the value of the Project Based Voucher by subtracting from the monthly Contract Rent, the Participant's share of rent which, for a Participant who pays separately for the cost of heat, shall be a minimum of 30% of Participant's net income, and for a Participant who does not pay separately for the cost of heat, shall be a minimum of 35% of Participant's net income.

(6)  In cases of extreme medical hardship, each Participant who has been granted an exception to the Maximum Allowable Rent, used in the Chapter 707 Program as of September 1, 1991, shall be eligible for an additional monthly Voucher Payment in the amount of the difference between the rent approved and the Ceiling Rent. The LHA shall determine on an annual basis at recertification that the Participant remains eligible for an extreme medical hardship status.

(7)  For the purpose of determining the value of a Mobile or Project Based Voucher, a Participant's net income shall be determined as follows:

(a)  Gross Income.  A Participant's gross income means the income from all sources of the head of the household and co-head, and each additional member of the household who is at least 21 years of age, which is anticipated to be received during the 12 months following admission or redetermination of household income. Earned income of a working child under the age of 18 shall not be included in a Participant's gross income. One half of the income of a working child, age 18, 19 and 20 shall be included in a Participant's gross income. Income of Full-time Students, as defined in 760 CMR 6.03, shall not be counted.

1.  Items which are to be included in gross income are set out in 760 CMR 6.05(2).

2.  Items which are to be excluded from gross income are set out in 760 CMR 6.05(3).

(b)  Net Income.  A Participant's net income is gross income less the items set out in 760 CMR 6.05(4), except that:

1.  There shall be no $300 or $400 flat deductions from income as contained in 760 CMR 6.05(4)(a) through (c).

2.  There shall there be no deduction for heat as described in 760 CMR 6.05(4)(d).

760 CMR:  DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

### 49.09:  Required Documents

Documents required in the administration of the MRVP shall include, but are not limited to:

(1) Annual Contributions Contract. (ACC).  An ACC setting out the duties and obligations of the Department and the LHA must be signed by authorized representatives of both parties.

(2) Voucher Payment Contract.  A contract provided by the Department must be signed by the Owner of a Contract Unit or the Owner's Agent and an LHA.

(3) Lease Addendum.  All MRVP Participants and Owners or Owner's Agents are required to execute an MRVP Lease Addendum prescribed by the Department. This document insures that a Participant is not bound by a lease that unfairly waives certain legal rights.

(4) Voucher.  All MRVP Participants and authorized LHA representatives must sign a Voucher in a form provided by the Department which shall set out the rights, duties and obligations of the Participant.  The Voucher shall constitute a contract between the Participant and the LHA.

(5) Request for Program Payment.  When a Mobile Voucher Holder locates a Suitable Unit, the Voucher Holder shall submit to the LHA a Request for Program Payment, on a form prescribed by the Department which shall set out the address of the proposed Contract Unit, the number of bedrooms, the party responsible for payment of utilities, the name and address of the Owner or the Owner's Agent, and the proposed Contract Rent.

### 49.10:  Grievance Procedure

Grievances as defined in 760 CMR 6.03 may be filed by Participants.  Grievances so filed shall be processed in accordance with 760 CMR 6.08, or as otherwise approved by the Department.

### 49.11:  Waiver Provision

Provisions of 760 CMR 49.00 may be waived in writing by the Director of the Department of Housing and Community Development if requested by an LHA in writing for a good reason.


REGULATORY AUTHORITY

760 CMR 49.00:  M.G.L. c. 23B; c.121B, § 29.


(PAGES 465 THROUGH 480 ARE RESERVED FOR FUTURE USE.)

24 HR. PAGE SERVICE

NOTARY PUBLIC

# APPLEBAUM & APPLEBAUM

## CONSTABLES

POST OFFICE BOX 213
RANDOLPH, MASSACHUSETTS 02368
(617) 963-6758
(617) 575-9383

EXIBIT 15

DEDHAM DIVISION

TO: Oak-Hee Ruesch

4 Cedar St #302

Wellesley MA 02481

Date: 9/11/99

Pursuant·to M.G.L. Chap. 357, S.2, by virtue of Execution No. 9954 CV 1072

issued by the_____Dedham District Court_____Court.

## You are hereby notified that on the __Wednesday 15th__ day of

__September_____19 99__, at __2:30__ A.M./P.M. I will serve and/or

levy upon said Execution and physically remove the defendant(s) and his

or her personal property from the said premises if the said defendant has

not prior to that time vacated the said premises voluntarily.

_____
Constable

Suffolk County Storage Inc
10 Farnham St
Roxbury MA

Jerrald M Vengrow
CONSTABLE/WELLESLEY MA

A TRUE COPY
ATTEST
ROBERT
CONSTABLE



# COMMONWEALTH OF MASSACHUSETTS

**NORFOLK, ss**

**DISTRICT COURT DEPT.
OF THE TRIAL COURT
DEDHAM DIVISION
DOCKET NO: 9954-CV-1072**

| | |
|---|---|
| **FIC MANAGEMENT, INC.** ) | **MEMORANDUM OF DECISION** |
| ) | |
| **VS.** ) | |
| ) | |
| **OAK-HEE RUESCH** ) | |

The Petitioner, Oak Hee Ruesch, appeared ex parte before the court on October 14, 1999, seeking to reopen the previously adjudicated Summary Judgment matter. After hearing the motion was denied. Petitioner was provided with information regarding referral to possible appropriate social services.

By the Court,

*Lynda M. Connolly*, J.

Lynda M. Connolly
Justice
October 15, 1999

C::mydocs\SP the ArdmoreOak Hee Reusch.wpd 10/15/99

RECEIVED

FEB 2 2 2001

-1-

Exhibit 11
(2-6)